IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FERDI, LLC,<br><br>　　　　　*Plaintiff,*<br><br>　　v.<br><br>J&J ASSET SECURISATION S.A. and,<br>JEAN-BASTIEN THIERRY PASQUINI<br>a/k/a JEAN BASTIEN PASQUINI<br><br>　　　　　*Defendants.* | CIVIL ACTION<br>NO. 22-04387 |

**PAPPERT, J.**                                                                                                                 **January 11, 2024**

## <u>MEMORANDUM</u>

     Dr. Ivona Percec does not subscribe to the maxim that "all's fair in love and war," at least as it applies to being left to pay the financing and expenses of a home her paramour, Jean-Bastien Thierry Pasquini, promised to share with her equally. After falling in love, the couple found a large home in Bryn Mawr, Pennsylvania, where they could live together with their respective children. They orally agreed the home would be owned by Ferdi, LLC, an entity solely owned by Percec, and that Ferdi and Pasquini would split all costs, mortgage free. A series of written agreements, none of which Ferdi would have entered into absent the underlying oral agreement, served as security for the home's financing.

     For a few years, Pasquini honored his oral contract with Ferdi and made his share of the payments—until he abruptly moved out and left Ferdi with all the bills. Without Pasquini's help, Ferdi struggled to cover the expenses and eventually stopped paying on a mortgage loan Pasquini, under curious circumstances, later insisted it take out on the house. A state court foreclosure action ensued.

1

Love then turned to war.  Ferdi filed this lawsuit in November of 2022, alleging fraud in the inducement, breach of the covenant of good faith and fair dealing, breach of contract, fraud, tortious interference with prospective economic benefit, slander of title and negligent misrepresentation.  (ECF 1).  Defendants moved to dismiss the initial complaint.  (ECF 8).  The Court held oral argument on the motion, and from the bench, granted and denied it in part, allowing Ferdi leave to amend.  (ECF 16).

Ferdi's amended complaint no longer asserts the fraud claims, breach of the covenant of good faith and fair dealing[1] or slander of title, and instead alleges breach of contract (Count I), tortious interference with prospective economic benefit (Count II), negligent misrepresentation (Count III) and a failure to provide consumer disclosures under Pennsylvania's Loan Interest and Protection Law, commonly called "Act 6" (Count IV).  Defendants move to dismiss the amended complaint in its entirety, and for the reasons that follow, the Court again grants their motion in part and denies in part.  Counts I, II and III survive, but Count IV is dismissed with prejudice.

I

In 2015, Percec, a plastic surgeon practicing in Philadelphia, and Pasquini, a financial advisor, found a large home in Bryn Mawr where they would live with their combined families.  (Am. Compl. ¶¶ 14, 17–19, ECF 17).  The couple agreed that the home would be owned by Ferdi, LLC, an entity wholly owned and controlled by Percec.

---

[1] Rather than asserting it as a separate count, Ferdi includes the alleged breach of the implied duty of good faith and fair dealing in the breach of contract claim. (Am. Compl. ¶¶ 76–83).  In any event, a claim for breach of the implied covenant of good faith and fair dealing is subsumed in a breach of contract claim.  *See Burton v. Teleflex, Inc.*, 707 F.3d 417, 432 (3d Cir. 2013) (citing *JHE, Inc. v. Se. Pa. Transp. Auth.*, No. 1790, 2002 WL 1018941, at *5 (Pa. Com. Pl. May 17, 2002) ("[T]he implied covenant of good faith does not allow for a claim separate and distinct from a breach of contract claim.  Rather, a claim arising from a breach of the covenant of good faith must be prosecuted as a breach of contract claim, as the covenant does nothing more than imply certain obligations into the contract itself.")).

(*Id.* ¶ 20). Purchasing and maintaining the home obviously required significant financial resources, so Pasquini and Ferdi orally agreed that they would split the expenses equally, including utilities, maintenance costs, property taxes and finance expenses—an arrangement Ferdi refers to as the "Pasquini/Ferdi Agreement." (*Id.* ¶¶ 3, 23–24).

J&J Asset Securisation, where Pasquini was a director, issued to Ferdi a December 15, 2015 Letter of Intent to provide $2,800,000 in financing for Ferdi to acquire, renovate and furnish the home. (*Id.* ¶¶ 15, 25); (Letter of Intent, ECF 17-1). In March of 2016, J&J and Ferdi entered into two written agreements: a Loan Agreement whereby J&J loaned Ferdi $2,750,000, and a Share Pledge Agreement, which served as security for the financing. (Am. Compl. ¶¶ 30–32); (Loan Agreement, at 6, ECF 17-3); (Pledge Agreement, ECF 17-2). Later that month, Ferdi bought the home for $2,250,000, significantly less than the amount of financing provided. (Am. Compl. ¶ 39). Ferdi contends it did not execute a mortgage at this time, (*id.* ¶ 35), and that absent the oral agreement with Pasquini, it never would have acquired the property or executed the Letter of Intent, Loan Agreement or Share Pledge Agreement. (*Id.* ¶¶ 22–23, 36).

For the next two years, Ferdi and Pasquini honored the oral agreement and shared equally the expenses associated with the house, (*Id.* ¶¶ 41, 72), though it was not without incident. For instance, Pasquini would insist on wiring his portion of the financing expenses to Ferdi for Ferdi to then wire back the same funds along with Ferdi's share to J&J. (*Id.* ¶ 43). Pasquini also made a "peculiar call" to Percec sometime in 2017, where he told her there was an urgent problem with the house's

3

financing which threatened the good standing of his financial advisor license. (*Id.* ¶¶ 48–49). Ferdi alleges that Pasquini was "nearly hysterical" and said the only way to solve the problem was for Ferdi to take out a mortgage on the home with J&J. (*Id.* ¶¶ 50–51). At Pasquini and/or J&J's insistence, Ferdi executed the mortgage, which it alleges is false and backdated to March 3, 2016. (*Id.* ¶ 53). Ferdi maintains it would not have signed the mortgage but for Pasquini's insistence that it was necessary to save his financial advisor license. (*Id.* ¶¶ 51–53, 56). Even after this incident, however, Pasquini continued to honor the Pasquini/Ferdi agreement.

Everything changed at the end of 2018. Pasquini planned to spend Christmas at the home with Percec and her children. (*Id.* ¶¶ 59–60). Instead, he abruptly left without explanation and, beginning with the January 2019 payment, stopped paying his share of the expenses, leaving Ferdi alone to handle annual expenses exceeding $100,000 a year—costs Ferdi cannot cover. (*Id.* ¶¶ 63–64, 74). Ferdi eventually stopped making payments on the J&J loan, and in 2020, J&J filed a foreclosure action in the Montgomery County Court of Common Pleas, which remains pending. (*Id.* ¶¶ 8, 64–65).

II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where the

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but not shown, that the pleader is entitled to relief. *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87). Even if a party does not make a formal motion to dismiss, the Court may, on its own initiative, dismiss the complaint for failure to state a claim where the inadequacy of the complaint is apparent as a matter of law. *See, e.g., Zaslow v. Coleman*, 103 F. Supp.3d 657, 664 (E.D. Pa. May 5, 2015).

### III

First, Ferdi alleges that Pasquini breached the oral contract to share all costs and expenses when he abruptly ceased his payments following Christmas 2018. Under Pennsylvania law, a breach of contract claim contains three elements: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003). Defendants contend there was no contract between Ferdi and Pasquini

because Pasquini never agreed to one, and even if he did, he received no consideration for doing so. (Mot. To Dismiss, at 3, ECF 18–1).

To establish the existence of a contract one must show: (1) both parties manifested an intent to be bound by the terms of the agreement; (2) the terms of the agreement are sufficiently definite to be enforced; and (3) there is mutuality of consideration. *Redick v. Kraft, Inc.*, 745 F. Supp. 296, 300 (E.D. Pa. 1990) (citing *Channel Home Ctrs. v. Grossman*, 795 F.2d 291, 298–99 (3d Cir. 1986). "Consideration is 'an act, forbearance, or return promise bargained for and given in exchange for the original promise.'" *Ecore Int'l, Inc. v. Downey*, 343 F. Supp.3d 459, 491 (E.D. Pa. 2018) (citing *Universal Computer Sys. v. Med. Servs. Ass'n of Pa.*, 474 F. Supp. 472, 477 (M.D. Pa. 1979), *aff'd*, 628 F.2d 820 (3d Cir. 1980)).

Ferdi alleges facts showing Pasquini and Ferdi's mutual intention to be bound by the oral agreement, sufficiently definite terms, and consideration, namely, that both would live in the home. Ferdi and Pasquini purportedly agreed to split the utility expenses, maintenance costs, property taxes and financing expenses, so they could live there with their respective children. (Am. Compl. ¶¶ 5, 19, 23). Pasquini purportedly assented to this arrangement since he "insist[ed] upon lavish and extravagant furniture" and made his share of the payments for nearly two years. (*Id.* ¶¶ 5, 18–22, 71). He then allegedly breached the agreement when he bolted from the home, stopped contributing to the effort and left Ferdi to unsuccessfully struggle to pay the bills, including the household and utility expenses, ultimately resulting in the foreclosure action.[2] (*Id.* ¶¶ 69, 72, 74).

---

[2] While Defendants' motion does not seek Count I's dismissal based on the statute of frauds, they make that argument as an afterthought in their reply brief. (Reply To Resp. To Mot. To

IV

A

Ferdi also asserts two tort claims: (1) tortious interference with prospective economic benefit and (2) negligent misrepresentation.

A tortious interference with prospective economic benefit claim requires Ferdi to show: (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct. *Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000) (citing *Strickland v. University of Scranton*, 700 A.2d 979, 985 (Pa. Super. Ct. 1997). Ferdi contends that J&J and Pasquini tortiously interfered with the disposition of the home by recording the backdated mortgage and then filing the "fraudulent foreclosure action," depriving Ferdi of the any economic benefit, presumably from a prospective sale of the home. (Am. Compl. ¶ 86).

To state a negligent misrepresentation claim, Ferdi must allege: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to

---

Dismiss, at 3, ECF 20). *See Houser v. Feldman*, 569 F. Supp.3d 216, 223 n.2 (E.D. Pa. 2021) (quoting *United States v. Martin*, 454 F. Supp.2d 278, 281 n.3 (E.D. Pa. 2006) ("A reply brief 'is intended only to provide an opportunity to respond to arguments raised in the response brief; it is not intended as a forum to raise new issues.'"). While Ferdi addresses the argument in its sur-reply (albeit without permission, contrary to the Court's Policies and Procedures), the Court need not take up the issue now. *See ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 862 (3d Cir. 1994) (noting that "many courts have concluded that motions to dismiss based on the statute of frauds are improper"); *Flight Sys., Inc. v. Electronic Data Sys., Corp.*, 112 F.3d 124, 127–30 (3d Cir. 1997).

act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. *Bortz v. Noon,* 729 A.2d 555, 561 (Pa. 1999). A negligent misrepresentation claim must also be based on some duty owed by one party to another. *Morilus v. Countrywide Home Loans, Inc.*, 651 F.Supp.2d 292, 306 (E.D. Pa. 2008) (citing *Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 890 (Pa. 1994)). Ferdi's negligent misrepresentation claim, though difficult to discern, is premised on the allegations that Pasquini and J&J represented that Pasquini, intending to use the home as a residence with Percec, would split the shared expenses; a mortgage was not executed at the time the home was acquired; J&J now claims the allegedly false mortgage is commercial, not residential, and Ferdi contends any mortgage encumbering the property would have been strictly residential. (Am. Compl. ¶¶ 91, 94–95).

B

Defendants do not move to dismiss the tort claims on the merits, nor do they raise the gist of the action doctrine—which bars a party from bringing a tort claim for what is essentially a breach of contract.[3] *See Bruno v. Erie Ins. Co.*, 106 A.3d 48, 60 (Pa. 2014). Rather, Defendants contend that Ferdi's tortious interference with

---

[3] In any event, based on the somewhat confusing nature of the allegations, and the Defendants' failure to address Counts II and III on the merits, the Court will not rule on the tort claims at this stage. It is unclear, however, if Ferdi has adequately pled a reasonable likelihood that an anticipated contractual relation, namely selling the house, would have materialized absent the alleged tortious conduct. *See Acumed LLC v. Advanced Surgical* Services, *Inc.*, 561 F.3d 199, 213 (3d Cir. 2009). Ferdi does not allege it tried to sell the home or even discussed doing so, and the effect on the economic value of the home, without more, may not be enough. *Phillips v.* Selig, 959 A.2d 420, 428 (Pa. Super. 2008) (defining a prospective contractual relationship to be more than mere hope or optimism of a future transaction). Moreover, to the extent the gist of the action doctrine applies to the negligent misrepresentation claim, the Court will address the issue, if raised, at a later time, considering "caution should be exercised in determining the 'gist of the action' at the motion to dismiss stage." *See Raymond Handling Concepts Corp. v. Invata, LLC*, No. 23-145, 2023 WL 6626127, at *11 (E.D. Pa. Oct. 11, 2023).

prospective economic benefit and negligent misrepresentation claims are time-barred. *See* 42 Pa. C.S. § 5524(7) (establishing a two-year statute of limitations). But "[a] complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)). That is not the case here. The amended complaint, like its predecessor, is all over the place with respect to exactly what happened and when. While Defendants insist that the claims accrued in either 2017 when the allegedly false mortgage was signed, or in December of 2018 when Pasquini stopped making payments, (Mot. To Dismiss, at 5), Ferdi contends the false mortgage was merely a modification of the Pasquini/Ferdi agreement and the claims for tortious interference and negligent misrepresentation arose after J&J initiated the foreclosure in 2020. (Resp. To Mot. To Dismiss, at 9, ECF 19). Even so, Ferdi did not file suit until November 2, 2022, but the amended complaint does not include the date Ferdi was allegedly served in the foreclosure action.[4]

V

In Count IV, Ferdi claims J&J failed to provide consumer disclosures, specifically, by failing to comply with Pennsylvania's Loan Interest and Protection Law, commonly called "Act 6," insofar as it did not provide Ferdi proper notice of its intent to

---

[4] Defendants also argue that Ferdi's claims should be dismissed because Ferdi did not suffer any damages. (Mot. To Dismiss, at 7). However, the amended complaint says that Ferdi was forced to cover all carrying costs along with payments under the allegedly false mortgage. *See* (Am. Compl. ¶¶ 7, 63).

foreclose.[5] 41 P.S. § 101.  However, Defendants contend that Ferdi was not entitled to Act 6 notice because it only applies to "residential mortgages," which is defined as "an obligation to pay a sum of money in an *original bona fide principal amount of the base figure or less . . . .*" 41 P.S. § 101 (emphasis added).  The Pennsylvania Department of Banking and Securities sets the base figures, which in 2016 and 2017, were $241,324 and $244,856, respectively.  *See* Pennsylvania Dep't of Banking and Sec., 2024 Act 6 Residential Lending Rates (2024), https://www.dobs.pa.gov/For%20Media/Pages/Act-6-Information.aspx.[6]  The principal amount of a loan is measured at the time of the consummation of the transaction.  *In re Grayboyes*, No. 05-178, 2006 WL 437546, at *7 (E.D. Pa. Feb. 22, 2006), *aff'd sub nom. In re Grayboyes*, 223 F. App'x 112 (3d Cir. 2007)

The Act 6 notice requirement does not apply to Ferdi because the mortgage is not a residential mortgage under the statute.  The $2,750,000 mortgage far exceeds the base amount in both 2016 (when the mortgage was dated) and 2017 (when the mortgage was recorded).[7]  *See, e.g., US Bank Nat'l Assoc. v. Applegate*, No. 1566, 2016 WL 5417949, at *9 (Pa. Super Ct. Aug. 10, 2016) ("Act 6 Notice requirements do not apply to this matter, because the original bona fide principal amount of the mortgage loan exceeds the base figure . . . .").

An appropriate Order follows.

---

[5] To the extent Ferdi alleges that J&J "flagrantly violated Pennsylvania consumer protection laws" prior to Ferdi's execution of the false mortgage, (Am. Compl. ¶ 106–108), it does not allege what consumer protection laws were violated.

[6] The Court takes judicial notice of the base figures published by the Department of Banking and Securities on an official Pennsylvania government website.  *See Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017); *Morgan v. Pennsylvania*, No. 23-872, 2023 WL 6461245, at *2 (M.D. Pa. Oct. 2, 2023) ("[T]he Third Circuit has followed the prevailing wisdom that documents available on government websites are public records.").

[7] The $2,750,000 mortgage far exceeds the 2024 base figure of $312,159 as well.

BY THE COURT:


*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.